QUANTITY OF COTTON (CLIFTON v.). See Case No. 2,895.

## Case No. 11,493.

### QUANTITY OF DISTILLED SPIRITS.

[2 Ben. 101; [2] 7 Int. Rev. Rec. 29.]

District Court, S. D. New York. Jan., 1868.

INTERNAL REVENUE—BONDING DISTILLERY PROPERTY—FRAUD.

1. Where distillery property is libelled for alleged violation of the internal revenue laws, the rule of the court is not to allow it to be bonded where there is reasonable ground, on the evidence, to believe that the law has been violated.

2. Where it appeared, plainly, that a rectifying establishment and a distillery were situated close together, and that appliances existed by means of which spirits could easily be run into the rectifying establishment from the distillery in fraud of the law, and there was some evidence that that had been done, the motion to

[1] [Reported by Hon. William Cranch, Chief Jud_...]

[2] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

bond was denied. notwithstanding the positive affidavits of the claimant and his foreman and his workmen, that it had not been done.

3. On such an application. the government is not bound to furnish the details of its evidence, any further than is necessary to show reasonable and probable ground to sustain the prosecution.

At law.

S. G. Courtney, U. S. Atty.

A. J. Dittenhoefer, for claimant.

BLATCHFORD, District Judge. This is an application to bond a distillery and other property, seized at 415 East Forty-Fifth street, and libelled for a violation of the internal revenue laws. The question of bonding distillery property worth more than $1,000, is expressly confided by the statute to the discretion of the courts. The rule which I have always adhered to, has been not to bond in a case where I have reasonable ground to believe, from the evidence placed before me, that the law has been violated. In the present case, the property is valuable, and the distillery extensive. The capacity to defraud the revenue is large, if the means and the will exist. This is the second application which has been made to me to bond this property, a former application having been denied. I permitted a renewal of it, which is made on new affidavits; and further affidavits are produced on the part of the government. The application has been urged with great pertinacity, and I have carefully examined the voluminous papers, with a view to see whether a case of probable guilt was made out.

I find, in this case, what experience has shown to be a very common occurrence in the business of distilling spirits—the close proximity of a rectifying establishment to the distillery, and a communication between the two by an underground pipe, ostensibly laid for the passage of Croton water—the two establishments often getting their supplies of water from a common main or source, and through a pipe common to both, to some extent. Under these circumstances, it requires but little ingenuity for men who wish to break the law and defraud the government, to arrange temporary and shifting means of drawing spirits illicitly from the receiving cisterns in the distillery, and conveying them into tubs in the rectifying establishment.

In the present case, the rectifying establishment was but a few feet distant from the distillery.· In a stable on the distillery premises, there was found a hose, about forty feet long, and one inch and a half in diameter, which. about one hour after the seizure, smelt and tasted strongly of spirits. On the outside of the distillery a permanent faucet was found at the end of a one and a half inch lead pipe, which pipe passed underground into the rectifying house. On trying the hose with the faucet, it was found that a butt suitable to the size of the hose would screw upon the mouth of the faucet, and the hose, when so attached to the faucet, was long enough to pass up and into a window near to and above the cistern room of the distillery. This hose was of a length wholly unnecessary for any of the ordinary purposes of filling barrels from the receiving cisterns, or otherwise conducting spirits. in a distillery, and it was a spirit-hose, and not a water-hose. The faucet referred to smelt and tasted of spirits. The lead pipe referred to connected with a faucet in the rectifying house, and the latter faucet smelt and tasted of spirits. There was found a stopcock arrangement, whereby the lead pipe referred to could be permitted to convey water, or be prevented from conveying water, at pleasure. When in the latter condition, it could convey spirits if they were furnished to it. The covers of the receiving cisterns in the distillery were four or five inches apart. Now, with these appliances and facilities for fraud, with the hose, and the butt, and the lead pipe in position, a syphon would easily draw spirits from the receiving cisterns into the hose, and pass them into the rectifying house.

The foregoing facts are clearly established. Yet the court is asked to overlook them, because no witness is produced on this motion, made on affidavits, who actually saw spirits run off in this illicit way, and is asked to credit the sworn denial of the proprietor of the distillery and his foreman and sundry workmen, in ex parte affidavits, that no spirits were run off in an illicit way. I cannot do so, but must regard the parties as presumptively guilty of having committed frauds which they seem so industriously to have put themselves in the way of being able to commit by proper appliances. Nor can I assume that, on this application, the government has brought forward, in reply to the motion, all the evidence it can furnish, when the case comes to a trial, to sustain a forfeiture. Applications to bond in these cases, are, as my experience shows, in many instances, made, not really with an expectation that the application will be granted, but with a view to compel the government to disclose the names of its witnesses and the details of its evidence. This it is not bound to do to any greater extent than is necessary to show probable and reasonable ground to sustain the seizure and prosecution.

It was strongly urged by the counsel for the claimant, that if a condemnation was had in this case, the government would be obliged, on execution, to sell the distillery at public auction, and then the claimant could purchase it, and resume business; and that, therefore, there was no force in any suggestion that the property ought not to be put back now into the claimant's hands, lest he might repeat any frauds he had committed. This argument ought equally to avail against any prosecutions whatever for for—

feitures of distilleries for frauds. The law forbids the bonding of distilleries not exceeding $1,000 in value, and requires that, on condemnation, they shall be destroyed. It authorizes the court, in its discretion, to bond distilleries of greater value than $1,000, and requires them to be sold on condemnation. But whether, when condemned, a distillery is to be destroyed or to be sold, it is none the less the duty of the public authorities to prosecute it, and of a court and a jury to condemn it, if it has incurred condemnation. So, also, it is none the less the duty of the court, in the exercise of the discretion confided to it in regard to bonding a distillery, to withhold from parties who have once deliberately provided themselves with the means of committing frauds, the opportunity of carrying out their manifest intentions, although the law may require that the property shall, on its final condemnation, be sold at public auction.

If this motion should be granted, the door might as well be thrown open wide and freely to all proprietors of distilleries and rectifying establishments, to provide the means for committing frauds, and then come into court and ask, as often as their property is seized, to have it restored to them on bond, as a matter of course. Congress has indicated clearly its intention that this shall not be done. The frauds on the revenue in the matter of distilled spirits have assumed gigantic proportions, and the proper enforcement of the laws demands that the public authorities, and the prosecuting officers, and courts and juries, should discharge their several duties in regard to suits and prosecutions concerning distilled spirits, with firmness and consistency.

The motion is denied.